IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MIGUEL SANTIAGO SOTO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:09CV292-HEH |
| | ) |
| MEADOW MILLS, INC. | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
(Granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction)

THIS MATTER is before the Court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Dk. No. 3), filed on May 5, 2009. The parties have filed extensive memoranda stating their respective positions, and the Court held a hearing on the Motion on June 12, 2009. For the reasons stated herein, Defendant's Rule 12(b)(2) Motion to Dismiss will be granted, and Plaintiff's action will be dismissed without prejudice.[1]

I. **BACKGROUND**

This is a product liability claim before this Court following removal from the Circuit Court for the City of Richmond. On October 5, 2004, Plaintiff, while employed by Scott Pallets, a Virginia Corporation, at its lumber mill in Amelia County, Virginia,

---

[1] Defendant also sought dismissal under Rules 12(b)(5) and 12(b)(6). Because the Court finds that it lacks personal jurisdiction over Defendant, it will not address Defendant's alternate grounds for dismissal.

suffered severe injuries to his right hand and forearm attempting to dislodge a jammed edger.

On April 13th, 2001, Defendant Meadow Mills, Inc. ("Defendant") purchased the assets of Soule Steam Feed Works ("Soule"), a Mississippi Corporation and the manufacturer of the edger involved in Plaintiff's alleged injuries. As part of the purchase agreement, Defendant agreed to purchase particular assets, but assumed no liabilities, related to the Miner Edger Division ("Miner Edger"), a business operated by Soule at the time of sale. The assets purchased included inventory, equipment, machinery, customer lists, company name and logo, and trade secrets related to Miner Edger. Soule continued its operations for a period of time after the sale of Miner Edger, but dissolved before Plaintiff's alleged injuries occurred in October 2004.

Plaintiff, a citizen of Mexico and resident of Virginia, filed suit against Defendant, a North Carolina Corporation on April 3, 2008, seeking to hold it liable for his alleged injuries. Enlisting a number of strained theories, Plaintiff contends that, as the current owner of the Miner Edger product line, Defendant assumed liability for his alleged injuries. Specifically, Plaintiff maintains that, because Defendant currently distributes and sells edgers under the Miner Edger trademark and because the edger at issue, which Defendant did not manufacture, contained a variety of flaws and defects, Defendant breached its duty to provide a safe product, including failing to warn foreseeable users of the edger about it safety design flaws. Therefore, Plaintiff maintains that Defendant

should be held liable for Plaintiff's injuries as the direct and proximate cause of the injuries.

Defendant removed the action to this Court on May 5, 2009, relying on the Court's diversity jurisdiction. After removing the case, Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(2). Defendant argues that Plaintiff cannot establish that Virginia's long-arm statute provides jurisdiction over it because it does not transact any business in and has no contact with the Commonwealth of Virginia. Consequently, Defendant contends that the Court lacks personal jurisdiction and should dismiss the Complaint in its entirety. The Court agrees.

## II. STANDARD OF REVIEW

An analysis of personal jurisdiction is normally a two-step process consisting of both statutory and constitutional components. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). Because Defendant is not a resident of Virginia, the Court may only exercise jurisdiction if Plaintiff can establish that Defendant's contacts with Virginia satisfy the Virginia long-arm statute, Va.Code Ann. § 8.01-328.1, and that the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Constitution. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).

When personal jurisdiction is challenged by a 12(b)(2) motion to dismiss, the burden is on the plaintiff "to prove grounds for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If Plaintiff makes the

requisite showing, the defendant then bears the burden of presenting a "compelling case" that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process. *Burger King v. Rudzewicz*, 471 U.S. 462, 477–78 (1985).

"If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. During the evidentiary proceeding, "a trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). For the purposes of a motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true. *See Carter v. Trafalgar Tours, Ltd.*, 704 F. Supp. 673, 674–75 (W.D.Va. 1989).

### III. ANALYSIS

This Court may properly exercise subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Defendant seeks to dismiss Plaintiff's claim in its entirety pursuant to Rules 12(b)(2), (5), and (6) of the Federal Rules of Civil Procedure. Before proceeding to the issues of whether the plaintiff has stated any valid causes of action or sufficiently served process, this Court must resolve the issue of personal jurisdiction as a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998).

To begin its analysis, the Court must determine whether it can assume jurisdiction under Virginia's long-arm statute, the function of which is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause. *Raymond, Colesar, Glaspy, & Huss, P.C. v. Allied Capital Corp.*, 761 F. Supp. 423, 426 (E.D.Va. 1991) (citing *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740 (1971)); *See also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (holding that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). Under Virginia's long-arm statute, "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code Ann. 8.01-328.1(A). This provision gives the Court jurisdiction over a non-resident party who transacts any business within the Commonwealth so long as the cause of action asserted arises from at least a single, purposeful transaction in Virginia. *Viers v. Mounts*, 466 F. Supp. 187, 190 (W.D.Va. 1979).

Plaintiff contends that Defendant normally conducts business in Virginia by generally providing edgers, parts, and service to edgers included in the Miner Edger product line. Specifically, Plaintiff asserts that Defendant's possession of a customer list containing Virginia customers and testimony from Robert Hege III, Defendant's CEO,

that Defendant would supply parts to a Virginia customer upon request supports this Court's exercise of personal jurisdiction over Defendant. Defendant responds that the facts do not support a finding that it was transacting any business in Virginia at the time of the incident or at present. Accordingly, Defendant contends that Plaintiff's injury did not "arise from" its conduct in Virginia as required by the statute, and, consequently, this Court lacks personal jurisdiction.

Plaintiff provides no specific evidence that Defendant conducted any purposeful business transactions in Virginia that would give rise to personal jurisdiction. Although Defendant purchased the assets of Soule, the facts do not establish that Defendant participated in the manufacture, service, or part distribution related to the edger that allegedly injured Plaintiff. Indeed, Mr. Hege testified that Defendant neither manufactured nor provided parts for the edger involved in Plaintiff's alleged injury. Additionally, Mr. Hege testified that Defendant does not employ sales representatives in Virginia and does not operate any distributorships in Virginia. Although Mr. Hege did acknowledge the possibility that Defendant has shipped parts to customers in Virginia at some point in time, Plaintiff provides no evidence of such dealings, nor any specific instances in which Defendant established contacts in the Commonwealth. Plaintiff also offers no evidence of how many times, if any, Defendant may have shipped parts to Virginia.

Additionally, even if Plaintiff proffered evidence of this nature, the Court would

nevertheless lack personal jurisdiction over Defendant. Defendant delivers all purchased edgers or parts FOB North Wilkesboro, North Carolina. FOB, an acronym for "freight on board" or "free on board," is a mercantile term denoting that the seller is responsible for delivering goods to the consignee at a specified location. "In an F.O.B. contract, the goods must be delivered on board by the seller, free of expense to the purchaser, and they are . . . at the latter's risk [when] actually delivered on board, [which is] when the property in them passes to him." Black's Law Dictionary 676 (8th ed. 2004). Accordingly, title and risk of loss for Defendant's edgers and parts would pass to any prospective purchaser, including those residing in Virginia, in North Carolina.

This Court has held that a plaintiff should not "be allowed to stretch [a defendant]'s business obligations into the Commonwealth simply by asking [defendant] to load [its goods] on a tractor trailer bound for Virginia." *See Bay Tobacco, LLC v. Bell Quality Products*, 261 F. Supp. 2d 483, 494 (E.D.Va. 2003). Thus, the possibility that Defendant's goods may be shipped to or through Virginia after being shipped FOB North Wilkesboro, North Carolina, does not establish that Defendant transacted business in Virginia, and the Court may not exercise jurisdiction over Plaintiff's claims on that basis.

The Court therefore finds that Plaintiff has failed to produce any evidence to support a finding by this Court that Plaintiff's cause of action arises out of Defendant's transacting any business in the Commonwealth as required by Virginia's long-arm statute. Because Plaintiff has failed to prove, by a preponderance of the evidence, that his claims

arise out of Defendant's business transactions in Virginia, Defendants' Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction will be granted.[2]

## IV. CONCLUSION

For the reasons stated herein, Plaintiff has failed to satisfy its burden of establishing personal jurisdiction. Defendant's Motion to Dismiss will be granted. Plaintiff's claims will be dismissed without prejudice. An appropriate Order will accompany this Memorandum Opinion.

It is SO ORDERED.

                                                  /s/
                                    Henry E. Hudson
                                    United States District Judge

Date: June 25, 2009
Richmond, VA

---

[2] Plaintiff filed a Motion for Default Judgment on June 12, 2009. The Court's finding that it lacks personal jurisdiction over Defendant renders Plaintiff's Motion moot, and it will be denied.